# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARYANN CELEDON,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:13-CV-00449-SMS<br><br>ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING ACTION FOR FURTHER ADMINISTRATIVE PROCEEDINGS<br><br>(Doc. 1) |

Plaintiff Maryann Celedon, by her attorneys, Law Offices of Lawrence D. Rohlfing, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits pursuant to Title II and for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) ("the Act").  This action was initially referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties filed their voluntary consent (Docs. 9 & 10) to proceed before a United States Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c).  The matter is before the Court on the parties' cross-briefs, which were submitted without oral argument to the Honorable Sandra M. Snyder, U.S. Magistrate Judge.  After a review of the complete record and applicable law, the Court will remand for further proceedings.

1

**BACKGROUND**

**I.   Procedural History**

On December 29, 2009, Plaintiff applied for disability insurance benefits and supplemental security income.  Plaintiff alleges onset of disability on November 13, 2005.   The Commissioner initially denied the claims on April 30, 2010, and upon reconsideration again denied the claims on September 21, 2010.  Plaintiff filed a timely request for a hearing on November 17, 2010.

On August 26, 2011, represented by counsel, Plaintiff appeared and testified at a video hearing presided over by Judson Scott, Administrative Law Judge ("ALJ").  *See* 20 C.F.R. 404.929 *et seq.*  An impartial Vocational Expert ("VE"), Lawrence Hughes, as well as three impartial medical experts, Allan Levin, M.D., Shakil Mohammed, M.D., and John Morse, M.D., also appeared and testified.  Time ran short at the first hearing.

On December 20, 2011, the ALJ presided over a supplemental video hearing.  Plaintiff again appeared and testified at the supplemental video hearing, represented by counsel.  The VE, Mr. Hughes, and the three impartial medical experts, Drs. Levin, Mohammed, and Morris, also again appeared and testified.

The ALJ denied the application on February 3, 2012.  On January 4, 2013, the Appeals Council denied review.  Plaintiff filed a complaint seeking this Court's review on March 27, 2013.

**II.  Administrative Record[1]**

**A.  Plaintiff's Facts and Testimony (August 26, 2011 and December 20, 2011)**

Plaintiff, born May 13, 1969, lived in a one-story apartment with her companion.  Plaintiff completed high school, had one year of college, and is able to communicate in English.  Plaintiff last worked in 2004 as a telephone operator, and had 20 years of clerical-type experience.  At the time of the hearing, Plaintiff was not currently working and had not worked since 2004.

---

[1] Plaintiff does not contest the ALJ's findings regarding the medical evidence or the weighing of her credibility.  Therefore, the Court summarizes only the disputed vocational evidence.

Plaintiff testified that she had diabetes, fibromyalgia, depression, asthma, irritable bowel syndrome, anxiety, arthritis, and pain in her neck, back, and right shoulder. Plaintiff stated that her asthma and diabetes were controlled with medication. As to her psychiatric condition, she testified that she took medications (Zoloft and Xanax), to control her depression and anxiety as prescribed by her physical medicine rehabilitation physician, Bradford Anderson, M.D. However, she was not currently receiving treatment from a psychiatrist.

**B. Vocational Expert Testimony**

Lawrence Hughes testified as vocational expert ("VE"). Hughes classified Plaintiff's past relevant work as a telephone operator as Specific Vocational Preparation ("SVP") level 3 – semi-skilled, sedentary exertional level. *See* DOT Code 235.662-022. Considering the demands of that work, the limitations of Plaintiff's Residual Functional Capacity ("RFC"),[2] and the Plaintiff's entire medical-vocational profile, Hughes testified that a similarly capable individual would be able to perform the demands of Plaintiff's prior work as it is actually and generally performed.

The ALJ posed the following hypothetical ("the First Hypothetical") to the VE:

I'd like you to assume a hypothetical individual . . . who has the same age, education, and experience as the claimant does, who has the capacity to engage in work at the light exertion level, which would permit the lifting and carrying of up to 10 pounds frequently and up to 20 pounds occasionally with the use of . . . both arms and hands together. However, if the right major arm is used by itself, it would be limited to 10 pounds, up to 10 pounds frequently, and 10 pounds occasionally. The hypothetical person has the capacity to sit, stand, and walk in each posture for up to six hours out of an eight-hour day, however, with a sit-stand option at will for comfort. Posturals are all occasional, except there would be a preclusion from climbing of ladders, ropes, and scaffolds, or crawling. There would be no overhead reaching or work with the right upper extremity. The hypothetical person is precluded from heavy grasping or gripping or torqueing with either hands [sic]. There would be no work at unprotected heights or around hazardous, moving machinery. There would also be no concentrated exposure to dust, gases, or fumes. The hypothetical person requires reasonable access to a bathroom and would also be able to have up to one added unscheduled break per

---

[2] A claimant's "residual functional capacity" is what a claimant can still do despite her limitations. 20 C.F.R. § 404.1545(a). Where those limitations are physical, the Commissioner "considers [the claimant's] ability to do various physical activities" walking, standing, lifting, carrying, pushing, pulling, reaching, handling and "evaluates other physical functions" to determine the claimant's "residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

3

1
2
3
4

day of up to 20 minutes in addition to the three regular breaks during the regular workday. Mental limitations would be the capacity to engage in simple, repetitive one- to three-step tasks; may have frequent contact with coworkers and supervisors; may have occasional public contact; may engage in normal-stress work. And finally, the hypothetical person may be . . . off task up to five to ten percent of the workday on a presumptive basis due to the combination of pain or prescription side effects. With that residual functional capacity . . . is the hypothetical person able to do any of the claimant's past work?

5
6
7
8
9
10
11
12

Before responding, Hughes asked the ALJ to clarify whether this hypothetical individual would require a daily unscheduled 20-minute break. The ALJ confirmed that she would. On that basis, Hughes opined that the individual from the first hypothetical would be "unemployable in the mainstream." The VE further testified that a similarly capable individual in a telephone operator position "could not . . . sit/stand at will. She could change position frequently. But if it has to be absolutely at will and she has to be able to perform her job standing, then she could not return to the switchboard job."

13
14
15
16
17
18
19
20
21
22

After reviewing his notes, the ALJ posed a second hypothetical ("the Second Hypothetical"), removing the option for the individual to sit or stand at will, instead requiring the individual's ability to change positions frequently for comfort. The VE testified that this hypothetical individual *would* be able to perform the telephone operator position if her unscheduled breaks were approximately five minutes. The VE stated that if the hypothetical RFC limitations required multiple 20-minute unscheduled breaks, then the individual would *not* be able to perform the telephone operator position. The VE opined that the bright line for employability was an unscheduled twice-daily break for a maximum of ten (10) minutes, a duration which, if exceeded, would render the hypothetical individual unemployable.

23
24
25

The ALJ posed a third hypothetical, modifying the relevant potential work to "unskilled."[3] The VE responded that notwithstanding that change, his determination would still hinge on the

26
27
28

---

[3] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding, and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or

duration of any required unscheduled breaks.  The VE referenced the Plaintiff's application in which she admitted having transferable skills such as experience with clerical duties, filing, writing, operating switchboards, a year of college, and 20-years of clerical type experience.  With her transferable skills, the VE opined that additional jobs existed in the national economy which a similarly capable individual could perform.  The VE testified that an individual with Plaintiff's RFC could perform any sedentary, semi-skilled[4] job with an SVP of 3, such as "appointment clerk" (DOT code 237.367-010), with 45,000 jobs available nationally and 4- to 5,000 in California.

The VE also testified that the hypothetical individual could perform any unskilled, sedentary level job with an SVP of 2, such as "document preparer" (DOT code 249.587-018), with 23,000 positions nationally and 2,000 in California, as well as "addresser" (DOT code 209.587-010), with over 16,000 positions nationally and approximately 1,600 in California.

In a fourth hypothetical, Plaintiff's counsel asked the VE to add to the RFC in the First Hypothetical the following moderate impairments: ability to perform simple and repetitive tasks; ability to maintain a work pace appropriate to the given workload; ability to perform complex or varied tasks; ability to relate to other people beyond giving and receiving instructions; ability to influence people; ability to make generalizations, evaluations, or decisions without immediate supervision; ability to accept and carry out responsibility for direction, control, and planning.   The VE testified that where an individual would be moderately unable to perform these functions "for up

---

machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled work." SSR 83-10.

[4] "Semiskilled work is work which needs some skills but does not require doing the more complex work duties. Semiskilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, material, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semiskilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." *See* Social Security Ruling 83-10; Social Security Regulations §§ 404.1568, 416.968.

5

to 30% of each day," such an RFC would preclude the hypothetical individual from working in the national economy.

Counsel then proposed a fifth hypothetical with the following modifications to the First Hypothetical: that the individual could only occasionally reach, grasp, grip, and torque with her right hand; was limited to lifting five pounds with her right upper extremity; and was moderately to severely impaired in her concentration, persistence, and pace.  The VE testified that this hypothetical individual would not be able to perform Plaintiff's prior work or any other job available in the national economy.

Counsel proposed a sixth hypothetical with the following modifications to the first hypothetical: the individual would have to be able to go to the bathroom three to five times during an eight-hour workday, totaling a required 75 minutes of unscheduled breaks per day.  The VE testified that such requirements would preclude work.

Counsel proposed a seventh hypothetical with the following modifications to the first hypothetical: the individual would require two unscheduled 30-minutes breaks to lie down, totaling a required 60 minutes of unscheduled breaks per day.  The VE testified that such requirements would also render the hypothetical individual non-employable.

Counsel proposed an eighth hypothetical with the following modifications to the first hypothetical: the individual would miss at least three workdays per month, possibly more, due to doctor's appointments and/or emergency visits to the doctor.   The VE testified that this hypothetical person would be precluded from working in the national economy.

## LEGAL STANDARD

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  The record as a whole must be considered, weighing both the evidence that supports and that which detracts from the Commissioner's decision.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).  In weighing the

evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). If the ALJ applied the proper legal standards and the ALJ's findings are supported by substantial evidence, this Court must uphold the ALJ's determination that the claimant is not disabled. *See, e.g., Ukolov v. Barnhart*, 420 F.3d 1002, 104 (9th Cir. 2005); *see also* 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1998 (9th Cir. 2008). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch*, 400 F.3d at 679. Where the evidence as a whole can support either outcome, the Court may not substitute its judgment for the ALJ's, rather, the ALJ's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## DISCUSSION

An individual is considered disabled for purposes of disability benefits if she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a) (3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). In the first-step analysis, the ALJ must determine whether the

claimant is currently engaged in substantial gainful activity.  20 C .F.R. §§ 404.1520(b), 416.920(b).

If not, in the second step, the ALJ must determine whether the claimant has a severe impairment or a

combination of impairments significantly limiting her from performing basic work activities.  *Id.*

§§ 404.1520(c), 416.920(c).  If so, in the third step, the ALJ must determine whether the claimant

has a severe impairment or combination of impairments that meets or equals the requirements of the

Listing of Impairments, 20 C.F.R. 404, Subpart P, App. 1.  *Id.* §§ 404.1520(d), 416.920(d).  If not, in

the fourth step, the ALJ must determine whether the claimant has sufficient RFC, despite the

impairment or various limitations to perform his past work.  *Id*. §§ 404.1520(f), 416.920(f).  If not,

in step five, the burden shifts to the Commissioner to show that the claimant can perform other work

that exists in significant numbers in the national economy.  *Id*. §§ 404.1520(g), 416.920(g).  If a

claimant is found to be disabled or not disabled at any step in the sequence, there is no need to

consider subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. §§

404 .1520, 416.920.

　　　　In the five-step sequential review process to determine whether a claimant qualifies as

disabled, the burden of proof is on the claimant at steps one through four, but shifts to the

Commissioner at step five.  *See Tackett,* 180 F.3d at 1099.  If the ALJ determines that a claimant is

either disabled or not disabled at any step in the process, the ALJ does not continue on to the next

step.  *See* 20 C.F.R. § 416.920(a)(4).

　　　　The first step is not at issue.  Both Plaintiff and the Commissioner agree that Plaintiff is not

currently performing substantial gainful work.  *See* 20 C.F.R. § 416.920(a)(4)(i).  At steps two and

three, the ALJ found that Plaintiff's reactive obstructive airway disease, tendonitis and full tear of

the rotator cuff, degenerative disc disease of the cervical spine, disc bulge of L5-S1, chronic pain

syndrome, gastritis, irritable bowel syndrome, gastroesophageal reflux disease, and depressive

disorder not otherwise specified (20 CFR 404.1520(c) and 416.920(c)) were severe impairments, but

that none of these impairments alone or in any combination met or medically equaled the severity of

8

an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  Plaintiff does not challenge the ALJ's construction of her RFC.  Therefore, steps two and three are not at issue.

As an intermediate step between steps three and four, the ALJ must assess the claimant's RFC.  *See* 20 C.F.R. § 416.920(e).  The ALJ stated Plaintiff's RFC in this way:

> I find that the claimant has the residual functional capacity to perform a range of light work as defined in 20CFR 404.1567(b) and 416967(b) and SSR 83-10 specifically as follows: the claimant can [lift] and/or carry 20 pounds occasionally and 10 pounds frequently with the use of both arms and hands together; she can [lift] and/or carry up to 10 pounds if she is just using her right arm and hand; she can sit, stand and/or walk for six hours out of an eight-hour workday with the ability to change positions at will for comfort; she is precluded from crawling or climbing ladders, ropes, and scaffolds; she can perform all other postural activities occasionally; she is restricted from performing overhead reaching or work with the right upper extremity; she is precluded from heavy grasping, gripping, or troqing [sic] with either hand; she is prohibited from working at unprotected heights or around hazardous moving machinery; she is restricted from concentrated exposure to dust, gases, or fumes; she requires reasonable access to a restroom; she is permitted to have one additional unscheduled break per day that is under 10 minutes in addition to the three regular breaks during a regular workday; she is limited to performing simple repetitive one to three step tasks; she can have frequent contact with co-workers and supervisors; she can have occasional contact with the general public; she can engage in normal stress work; and she may be off task up to five to 10 percent of the workday on a presumptive basis due to the combination of pain or prescription side effects.

Plaintiff does not contest the ALJ's construction of her RFC**.**

At step four, the ALJ must determine whether, in light of the claimant's RFC, she can return to substantial gainful activity performed in the past.  20 C.F.R. § 404.1520(e).  Here, the ALJ determined that Plaintiff was capable of returning to her past relevant work as a telephone operator, thus is not disabled.  Plaintiff challenges the step-four findings and conclusion.

At step five, the Commissioner must establish that the claimant is capable of performing substantial gainful work.  The ALJ presented the above RFC to the VE, who then considered whether an individual burdened with the stated limitations could obtain gainful work in the national economy.  The VE testified that Plaintiff could not only return to gainful work in her former capacity as a telephone operator, but that she had transferable skills and could transition to work as an

1   appointment clerk, document preparer, or addressor.  Accordingly, the ALJ determined that Plaintiff

2   is not disabled.  Plaintiff also challenges the step-five findings and conclusion.

3       Plaintiff first challenges the ALJ's decision alleging that the ALJ's step four finding was

4   erroneous because it was based on vocational expert (VE) testimony that deviated from the

5   Dictionary of Occupational Titles ("DOT") and the ALJ did not obtain a reasonable explanation

6   from the VE for the deviation.   Second, Plaintiff argues that the ALJ's step-five finding was

7   erroneous because the VE testified that a hypothetical individual with Plaintiff's RFC – which

8   Plaintiff seems to read as including a sit or stand at will requirement – would be precluded from

9   work, including the three identified alternative occupations.  Therefore, Plaintiff argues, the ALJ's

10  nondisability determination is not supported by substantial evidence.

11

12      The Commissioner counters that the ALJ's step-four finding and conclusion is supported by

13  substantial evidence because the VE testified that a hypothetical individual with Plaintiff's RFC

14  could perform her prior work.  The Commissioner also contends that the ALJ's RFC finding did not

15  include a sit/stand at will requirement, but only that Plaintiff requires changing positions for comfort.

16  On that basis, the Commissioner argues that the ALJ's step-four determination was supported by

17  substantial support, was not erroneous, and a step-five analysis is unnecessary.  Even so, in a step-

18  five inquiry, the Commissioner contends that Plaintiff's age, education and previous work

19  experience direct a finding of not disabled under the Medical-Vocational Guidelines (also known as

20  "the grids") and, notwithstanding Plaintiff's limitations, the VE identified alternative jobs that

21  Plaintiff could perform that exist in significant numbers in the national economy.  Therefore, the

22  Commissioner contends that even if the step-four findings and conclusion were in error, it was

23  harmless error because the ALJ's step-five findings and conclusion were properly made.

24

25      For the reasons below, the Court finds that although the ALJ's construction of Plaintiff's

26  RFC did not include a sit/stand at will requirement, substantial evidence does not support the ALJ's

27  findings and conclusion at step four and five.

28

**A.  Step-Four Analysis (Past Relevant Work)**

At step four of the sequential analysis, the ALJ relied on the VE's testimony to conclude that Plaintiff was capable of performing her past relevant work as a telephone operator (also referred to as switchboard operator), as well as other sedentary work that was limited to simple, repetitive tasks.

Plaintiff asserts that the ALJ's step-four finding was erroneous because the DOT is silent about whether a person performing a telephone operator job has the ability to sit/stand at will, therefore when the VE testified as to Plaintiff's ability to perform her prior position in consideration of that requirement, his testimony deviated from the DOT without justification.  Plaintiff contends that because the ALJ did not obtain a reasonable explanation from the VE for the discrepancy from the DOT, the ALJ's step-four finding lacks the support of substantial evidence.  Plaintiff further contends that the ALJ's nondisability determination was in conflict with the VE's testimony that a sit/stand at will requirement would preclude an individual with Plaintiff's RFC from working.

The Commissioner argues that the ALJ did not err at step four because the ALJ's construction of the RFC did not include a sit/stand requirement.   Thus, the Commissioner contends, because the VE's testimony is not in conflict with the DOT it serves as sufficient support for the ALJ's findings and nondisability determination.

The record reflects that at step four, the ALJ relied on the VE's testimony that the telephone operator position has an SVP of 3 and that a similarly capable person with Plaintiff's RFC could perform such a semi-skilled, sedentary position. *See* DOT 235.662-022; *see also* SSR 00-4p (an SVP of 3 corresponds to semi-skilled work).  The VE testified that the telephone operator position was considered sedentary.[5]  *See* DOT Code 235.662-022.  The ALJ posed several hypotheticals to the VE.  In the Second Hypothetical, the ALJ explicitly modified the First Hypothetical, *supra*, removed

---

[5] To determine the physical exertion requirements of work in the national economy, the Commissioner classifies jobs as *sedentary, light, medium, heavy,* and *very heavy. See* Code of Federal Regulations § 404.1567.

11

the sit/stand option, and substituted the requirement that the individual be able to change positions frequently for comfort.

When presented with the Second Hypothetical, the VE testified that an individual with the same age, education, experience, and physical capabilities as Plaintiff would be able to perform Plaintiff's past work as a telephone operator.  Notwithstanding Plaintiff's mischaracterization of the ALJ's construction of Plaintiff's RFC – which in plain language does not include a sit/stand option[6] – the ALJ has "an affirmative responsibility" to ask about any possible conflict between the vocational expert's evidence and information provided in the Dictionary of Occupational Titles ("DOT").  *Masachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007); *see also* SSR 00-4p.  The Ninth Circuit, citing Social Security Ruling 00-4p, has stated that the ALJ's affirmative responsibility to inquire about a possible deviation is triggered when a vocational expert provides evidence about the requirements of a job or occupation.  *Masachi,* 486 F.3d at 1152.  The DOT defines the telephone operator job is as follows:

> Operates cord or cordless switchboard to relay incoming, outgoing, and interoffice calls: Pushes switch keys on cordless switchboard to make connections and relay calls. Plugs cord of cord type equipment into switchboard jacks to make connections and relay calls. May supply information to callers and record messages. May keep record of calls placed and toll charges. May perform clerical duties, such as typing, proofreading, and sorting mail. May operate system of bells or buzzers to call individuals in establishment to phone. May receive visitors, obtain name and nature of business, and schedule appointments [RECEPTIONIST (clerical) 237.367-038].

*See* DOT Code 235.662-022.

Parsing the VE's testimony, the Court finds that the VE gave no testimony modifying the DOT's job requirements.  Indeed, in response to the ALJ's hypothetical which listed a similar set of limitations to the ALJ's ultimate construction of Plaintiff's RFC, the VE referenced the specific DOT code for telephone operator and made no modifications. The DOT description of the job requirements demonstrates that these include tasks such as receiving visitors, sorting mail, using the

---

[6] The ALJ determined that the Plaintiff "can sit, stand and/or walk for six hours out of an eight-hour workday with the ability to change positions at will for comfort."

typewriter, and other clerical duties.  The  DOT's description is implicitly consistent with the VE's proposition that the hypothetical individual has the minimal degree of choice that would allow an individual to make physical movements from task to task without guidance about how to do so "frequently" with comfort.

However, the distinction between "at will" and "frequently" is meaningful.  The VE testified that a similarly capable individual with the same physical capabilities as described in hypothetical two would be able to perform Plaintiff's prior work as it is generally performed according to the DOT.  But his testimony was based on a hypothetical that merely allowed Plaintiff to "frequently" change positions, not to do so "at will" as included in the ALJ's final construction of Plaintiff's RFC.  The VE testified that a similarly capable individual could "frequently" change positions, but he emphasized that "if it has to be absolutely at will and she has to be able to perform her job standing, then she could not return to the switchboard job."  The ALJ did not elicit any other information about an individual's degree of choice as to movement "at will" on the job.  And the VE offered no testimony as to whether a similarly capable individual would have the necessary autonomy to change positions "at will" in a telephone operator position as it is generally performed. The DOT is likewise silent.  Therefore, the Court cannot conclude that the ALJ's step-four findings and conclusion are based on substantial evidence if no such evidence exists, (*see, e.g., Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005), and the ALJ did not ask the VE for a justification for this potential conflict (*see Massachi,* 486 F.3d at 1152).

The Court concludes that because the hypothetical posed to the VE did not contain all of the limitations that the ALJ ultimately found credible, the ALJ's reliance on the VE's testimony, in the absence of other evidence or justification for an apparent conflict, does not provide reasonably substantial support.

The Court's inquiry does not end there.  The weight of authority in this circuit, including in this district, has concluded that a limitation to simple, repetitive tasks is inconsistent with the DOT's

13

description of jobs requiring GED reasoning Level 3. *Espinoza v. Astrue*, No. 5:12-cv-00544-OP, 2013 WL 327889, at *3 (C.D. Cal. Jan. 29, 2013) (recognizing that the Ninth Circuit has not addressed the issue directly, but "the weight of authority in this Circuit holds that a limitation to simple, repetitive or routine tasks is incompatible with a reasoning level of 3"); *Kim v. Colvin* CV 13-01841-JEM, 2013 WL 6670335, at *8 (C.D.Cal. Dec. 18, 2013) (same); *Gonzales v. Astrue*, 1:10-CV-01330-SKO, 2012 WL 2064947 (E.D. Cal. June 7, 2012) (same); *Torrez v. Astrue*, No. 1:09-cv-00626-JLT, 2010 WL 2555847, at *8 (E.D. Cal. June 21, 2010) (finding DOT precludes claimant limited to simple repetitive tasks from performing jobs that requiring Level 3 reasoning based upon weight of authority in this circuit); *Grimes v. Astrue,* No. EDCV 09–2208–JEM, 2011 WL 164537, at *4 (C.D.Cal. Jan. 18, 2011) (limitation for simple, repetitive tasks not consistent with jobs requiring Level 3 reasoning); *Pak v. Astrue,* No. EDCV 08–714–OP, 2009 WL 2151361, at *7 (C.D.Cal. July 14, 2009) (reasoning level 3 conflicts with prescribed limitation that claimant can perform simple, routine tasks); *Squire v. Astrue,* No. EDCV 06–1324–RC, 2008 WL 2537129, at * 5 (C.D.Cal., Jun. 24, 2008) (Reasoning level 3 inconsistent with simple, repetitive work). *Tudino v. Barnhart*, 2008 WL 4161443, at *11 (S.D. Cal. Sept. 5, 2008) ("Level-two reasoning appears to be the breaking point for those individuals limited to performing only simple repetitive tasks.").

Telephone operator is such a job.  The position is considered Reasoning Level 3.  The VE testified that Plaintiff, or a similarly capable individual, could perform the telephone operator job despite the ALJ's construction of Plaintiff's RFC in the hypothetical limiting her "to performing simple repetitive one to three step tasks."  The ALJ should have requested a justification for this apparent conflict with the DOT in the VE's testimony.  *See Masachi*, 486 F.3d at 1152.

### B.  Step-Five Analysis (Other Potential Jobs Plaintiff Could Perform)

An ALJ's error in accepting VE testimony without requesting justification for its deviation from the DOT is harmless if in a proper step-five analysis an ALJ concludes that there are a significant number of other jobs a Plaintiff would be able to perform.  Accordingly, if after

reviewing the record the Court finds that evidence demonstrates that there are a significant number of jobs that Plaintiff can perform either at the local or national level, it must affirm the ALJ's decision. *Beltran v. Astrue*, 700 F. 3d 386, 390 (9th Cir. 2012).

Here, the ALJ concluded that a significant number of unskilled jobs existed in the economy which an individual with Plaintiff's limitations could perform.  Unskilled work is that which requires little or no judgment to do simple duties that can be learned on the job in a short period of time and needs little specific vocational preparation. *See* 20 C.F.R. § 416.968(a); *see also* SSR 83-10.  The basic mental demands of unskilled work include the ability to understand, carry out, and remember simple instructions.  SSR 85-15.  The ALJ determined that Plaintiff could perform a range of sedentary work, with a limitation to simple, repetitive tasks.  The Ninth Circuit has not directly addressed the issue, although many district courts including this one have found that the grids are applicable at step five because a person restricted to simple, repetitive tasks can perform unskilled work. *See e.g. Beaupre v. Astrue*, 2012 WL 1435032 (E.D. Cal. Apr. 25, 2012) at *11-12 (concluding that claimant's restriction to simple repetitive tasks and entry level work "was not sufficiently severe to warrant departure from the grids"); *Ramsey v. Astrue*, 2012 WL 5499900 (E.D. Cal. Nov. 13, 2012) at *6 (affirming the ALJ's reliance on the grids because the claimant's RFC for simple repetitive tasks that do not involve more than occasional interaction with the public was "consistent with unskilled work"); *Sam v. Astrue*, 2010 WL 496718 (E.D. Cal. Dec. 1, 2010) at *11 (affirming the ALJ's reliance on the grids where Plaintiff was limited to simple, repetitive tasks because "[t]he ability to perform simple, repetitive tasks is consistent with unskilled work"); *Tapia v. Colvin*, 2014 WL 4655829 (C.D. Cal. Feb. 4, 2014) at *4 (collecting cases).

Plaintiff does not challenge the ALJ's properly drawn conclusion that Plaintiff has the RFC to perform simple, repetitive tasks consistent with SVP Level 2 work.  The ALJ relied on the VE's testimony to substantiate his conclusion that Plaintiff could perform the positions of "appointment clerk" (DOT 237.367-010) with a Reasoning Level 3 and SVP Level 3; "document preparer" (DOT

249.587-018) with a Reasoning Level 3 and SVP Level 2; and "addresser" (DOT 209.587-010) with a Reasoning Level 2 and SVP Level 2. Like "telephone operator," both "appointment clerk" and "document preparer" have a Reasoning Level of 2, which conflicts with the ALJ's construction of Plaintiff's RFC that she is limited to performing only simple repetitive tasks.

As a result, only one potential job remains which could serve to support the notion that a significant number of jobs existed in the nationally economy that Plaintiff could perform, and about which the VE also testified. The VE testified that the "addresser" job is an unskilled, sedentary position with 16,000 jobs nationally and 1,600 in California, and that a similar unskilled job "allows for shifting position or standing or walking now and again, that sort of thing."

However, the DOT is silent on an individual's functional autonomy. The DOT description of "addresser" is as follows, "Addresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail." DOT 209.587-010. The DOT's description of the "addresser" position is not implicitly consistent with the proposition that an individual has the degree of choice to move "at will" for comfort as the job is generally performed. Considering that issue, the Court finds Social Security Ruling 83-12 instructive:

> Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base.

SSR 83-12.

Although the ALJ's final construction of Plaintiff's RFC does not include a sit/stand "at will" option, its plain language limits Plaintiff to those jobs where she can change positions "at will." If unskilled jobs are so particularly structured, the question remains whether the "addresser" position as generally performed is so restrictive as to also disallow the frequent changes of position "at will" required by Plaintiff's RFC. However, the ALJ failed to ask the VE to elaborate as to this distinction as it relates to the "addresser" position. The ALJ also failed to ask the VE to justify this possible conflict with the DOT. *See* SSR 00-4p. If the ALJ does not comply with SSR 00-4p, the ALJ may

16

not rely on a vocational expert's testimony regarding the requirements of a particular job. *Id.* (when a VE offers evidence about requirements of a particular job, the ALJ has an affirmative duty to ask whether the VE's testimony conflicts with the DOT); *see also Massachi,* 486 F.3d at 1152.

Therefore, the Court finds that despite the "addresser" position's appropriate Reasoning Level, the ALJ failed to fully develop the record to support his finding that a substantial number of jobs existed that could be performed by an individual with Plaintiff's limitations. *See Stout v. Commissioner, Social Sec. Admin.,* 454 F.3d 1050, 1054–55 (9th Cir. 2006). On this basis, the Court concludes that the ALJ erred in his step-five analysis.

**C. Harmless Error**

To determine whether this is harmless error, a court evaluates whether the error could "alter the outcome of the case." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'") (quoting *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). A reviewing court must consider "an estimation of the likelihood that the result would have been different." *Id.* at 1055 (finding that "[t]he ALJ's decision, and the record of [claimant's] contradictions, make it plain that the ALJ would have reached the same conclusion" as to disability if the ALJ had not erroneously considered *ex parte* evidence).

The failure to inquire about an inconsistency with the DOT may be considered harmless if there is no conflict or if the VE's testimony provides sufficient support to justify any potential conflict. *Massachi,* 486 F.3d at 1154 n. 19 (failure to follow SSR 00–4p would have been harmless if there had been no conflict between the opinion and DOT) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1435 (9th Cir. 1995)). "In order for an ALJ to accept [VE] testimony that contradicts the [DOT], the record must contain 'persuasive evidence to support the deviation.' " *Pinto v. Massanari,* 249 F.3d 840, 846 (9th Cir. 2001) (quoting *Johnson,* 60 F.3d at 1435).

The Court finds that there is no clear evidence that conflict does not exist between the VE's testimony and the DOT.  Moreover, the ALJ did not ask for, and the VE did not volunteer, persuasive evidence to support a deviation from the DOT, if any.

As the VE's testimony does not show that Plaintiff could perform work that existed in substantial numbers in the national economy and the ALJ's determination lacks other support, the Court finds that the ALJ erred in his step-five analysis because it was not supported by substantial evidence.  The Court concludes that this error was not harmless because it was potentially consequential to the ultimate nondisability determination.

**CONCLUSION AND ORDER**

Upon a careful review of the full record, the Court is unconvinced that Plaintiff is disabled. Yet, however reluctantly, the Court must remand because of the woefully inadequate record.  The Court concludes that the record is not fully developed to provide substantial evidence to support the ALJ's nondisability determination.  Accordingly,

**IT IS HEREBY ORDERED:**

1.  pursuant to sentence four of 42 U.S.C. § 405(g), that the matter is **REMANDED** for further proceedings consistent with this decision; and,

2.  the Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Mary Ann Celedon and against Defendant, Carolyn Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **September 11, 2014**                         **/s/ Sandra M. Snyder**
                                                                    UNITED STATES MAGISTRATE JUDGE